**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE:<br><br>MICHELE GENTRY STEWART,<br><br>    DEBTOR. | § § § § § § § § § | CASE NO: 17-12596<br><br>CHAPTER 13<br><br>SECTION "A" |
| REAL TIME RESOLUTIONS, INC. AS AGENT FOR RRA CP OPPORTUNITY TRUST 1,<br><br>    PLAINTIFF,<br><br>V.<br><br>UNITED STATES SMALL BUSINESS ADMINISTRATION,<br><br>    DEFENDANT. | § § § § § § § § § § § § § § § | ADV. NO. 19-1105 |

## MEMORANDUM OPINION AND ORDER

Real Time Resolutions, Inc. as Agent for RRA CP Opportunity Trust 1 ("RTR") initiated the above-captioned adversary proceeding to resolve a lien-ranking dispute with the United States Small Business Administration ("SBA"). The parties filed cross-motions for summary judgment. [ECF Docs. 12 & 14]. The resolution of the lien-ranking dispute turns solely upon the application of an exception to the Louisiana Public Records Doctrine. Because the material facts are undisputed, the Court can resolve the cross-motions as a matter of law. For the reasons identified below, the Court GRANTS the motion for summary judgment filed by RTR, [ECF Doc. 14], and DENIES summary judgment to the SBA. [ECF Doc. 12].

## JURISDICTION AND VENUE

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and the Order of Reference of the District Court dated April 11, 1990. The matters presently before the Court constitute core proceedings that this Court may hear and determine on a final basis under 28 U.S.C. § 157(b)(2)(A), (K), and (O). Venue is proper in this District. *See* 28 U.S.C. §§ 1408 and 1409(a).

## BACKGROUND

### A. Prepetition Encumbrances of the Debtor's Property

The parties agree on the material facts.

On September 28, 2017 (the "Petition Date"), Debtor Michele Gentry Stewart filed a petition for chapter 13 bankruptcy relief. [No. 17-12596, ECF Doc. 1]. In her Schedules, she listed 3208 Townshend Road in Gretna, Louisiana, as her homestead. [No. 17-12596, ECF Doc. 9, at 12]. Additionally, the Debtor listed two rental properties wholly owned by her located at 7848 N. Coronet Court (the "Coronet Property") and 2341 Odin Street (the "Odin Property"), both in New Orleans, Louisiana. [No. 17-12596, ECF Doc. 9, at 13].

Based on the Debtor's representations, as of the Petition Date, Regions Bank held a first mortgage against the Coronet Property in the amount of $12,071.63. [No. 17-12596, ECF Doc. 9, at 13; Proof of Claim No. 14 (filed by the Debtor on behalf of Regions Bank)].

By the Petition Date, RTR had acquired a debt originally owed by the Debtor to Hibernia National Bank on a Home Equity Line of Credit in the principal amount of $35,000 which originated on July 22, 2005 (the "HELOC Debt"). [ECF Doc. 14, Ex. A]. The repayment of the HELOC Debt was secured in part by the Odin Property via a Multiple Indebtedness Mortgage dated July 22, 2005, granted by the Debtor and recorded by Hibernia National Bank on August 4,

2005. *Id*. On January 24, 2017, Capital One, N.A. (which by that time had acquired Hibernia Bank) reduced the HELOC Debt to judgment against the Debtor in the Orleans Parish Civil District Court in the principal amount of $35,000. [ECF Doc. 14, Ex. C]. Capital One recorded that judgment on March 9, 2017. *Id*.[1] By virtue of that judgment, RTR also held a judicial mortgage over the Coronet Property. [ECF Doc. 14, at 3 (citing La. Civ. Code art. 3300)]. On January 30, 2018, RTR filed Proof of Claim No. 13-1 in the Debtor's case, alleging a $40,115.01 secured claim against the Debtor, listing a "second mortgage" on the Odin Property as the basis for its secured claim.

Also as of the Petition Date, the SBA held a Promissory Note in the principal amount of $132,300, secured by a Multiple Indebtedness Mortgage on the Odin Property (the "<u>SBA Mortgage</u>"). [ECF Doc. 12, at 2 (citing ECF Doc. 1, Ex. C)]. The SBA recorded its mortgage on July 5, 2006. *See id*. The SBA filed Proof of Claim No. 15-2 on December 19, 2019, alleging a secured claim against the Debtor in the amount of $88,865.99, and listing the Odin Property as the basis for its secured claim.

### B. Post-Petition Sale of the Debtor's Properties

On February 7, 2018, the Debtor filed its *First Amended Motion for Authority To Sell Property*, requesting leave of the Court to sell the Coronet Property for $25,000 (the "<u>Coronet Sale Motion</u>"). [No. 17-12596, ECF Doc. 36]. The Coronet Sale Motion proposed that the sale of the Property would satisfy the first mortgage of Regions Bank, with the remaining proceeds being used to satisfy normal closing costs, brokers' commissions, recordation fees and unpaid property taxes, as well as a portion of the judgment lien held by RTR. *Id*. On March 20, 2018, the Court granted the relief as requested in the Coronet Sale Motion. [No. 17-12596, ECF Doc. 51].

---

[1] For purposes of this Memorandum Opinion., the Court assumes, without finding, that RTR's acquisition of the Hibernia/Capital One debt is proper.

Following the sale of the Coronet Property, RTR received funds from the sale of the Coronet Property which were insufficient to pay the loan in full. [ECF Doc. 14, Ex. E]. But instead of issuing a partial cancellation of the mortgage on the Coronet Property, RTR "erroneously" issued a full cancellation of the mortgage on the Odin Property. *Id*. Almost a year from the date the Court granted the Coronet Sale Motion, RTR amended its Proof of Claim on March 5, 2019, reducing its secured claim to zero and stating that the "Property" had been sold. [No. 17-12596, Proof of Claim No. 13-2]. According to the affidavit submitted by RTR in support of its motion for summary judgment, its "cancellation and amendment of claim were the result of an internal error on behalf of employees of [RTR]." [ECF Doc. 14, Ex. E]. RTR further explained: "Employees acting on behalf of [RTR] acted under the mistaken belief that 2341 Odin Street was sold free and clear." *Id*.

On June 4, 2019, the Debtor filed *Debtor's Motion for Authority To Sell Property*, requesting the Court's permission to sell the Odin Property for $105,000 (the "Odin Sale Motion"), and setting that motion for hearing on June 25, 2019. [No. 17-12596, ECF Docs. 72 & 73]. The Certificate of Service filed by the Debtor stated that it served the Odin Sale Motion and Notice of Hearing on the Chapter 13 Trustee, the U.S. Trustee, and counsel for RTR via the Court's electronic filing system, and to the SBA via First Class Mail at two addresses: 10737 Gateway West, Suite 300, El Paso, Texas 79935, and 200 W. Santa Ana Blvd., Ste. 740, Santa Ana, CA 92701. [No. 17-12596, ECF Doc. 73].

On June 14, 2019, RTR filed a Response to the Odin Sale Motion. [No. 17-12596, ECF Doc. 75]. In its Response, RTR stated that, based on an "internal mistake," it "inadvertently" amended its Proof of Claim on March 5, 2019, reducing its claim against the estate to zero. It also stated that it mistakenly released its conventional mortgage on the Odin Property, instead of the

4

Coronet Property. [No. 17-12596, ECF Doc. 75, ¶ 5 & n.1].[2] RTR further asserted that it should be allowed to re-instate its mortgage on the Odin Property, arguing that its mistake falls into the narrow exception to the Louisiana Public Records Doctrine, which permits reinstatement of its mortgage due to mistake and inadvertence. [No. 17-12596, ECF Doc. 75, ¶ 8]. Because of its inadvertent cancellation of its mortgage on the Odin Property, RTR requested that the proceeds of the sale of the Odin Property be held in the Court's registry until the Court could determine whether to reinstate RTR's conventional mortgage (and therefore RTR's priority over the SBA as to the Odin Property) via an adversary proceeding. [No. 17-12596, ECF Doc. 75, ¶ 7]. Also on June 14, 2019, contemporaneously with filing its Response to the Odin Sale Motion, RTR filed the above-captioned adversary proceeding against the SBA, seeking to reinstate its mortgage on the Odin Property and a determination of its priority vis-á-vis the SBA. [ECF Doc. 1]. RTR served the Complaint initiating the Adversary Proceeding on the SBA pursuant to Bankruptcy Rule 7004(b)(4), [ECF Doc. 3], but did not serve its Response to the Odin Sale Motion on the SBA in the main case, [No. 17-12596, ECF Doc. 75].

The Court held a hearing on the Odin Sale Motion on June 25, 2019. Counsel for the Debtor, RTR, and the Chapter 13 Trustee appeared at the hearing. [Memo to Record No. 76]. The SBA did not appear. The Court granted the Odin Sale Motion and issued an Order on July 8, 2019 (the "Odin Sale Order"), not only approving the sale of the Odin Property, but also permitting RTR to reinscribe its mortgage, despite the pending Adversary Proceeding filed by RTR. [No. 17-12596, ECF Doc. 77]. The Odin Sale Order required the Debtor to pay the full amount of RTR's reinscribed mortgage after paying closing costs and fees and ordered that any remaining funds to

---

[2] Footnote 1 of RTR's response states: "Creditor internally misread the Order on the Motion to Sale [the Coronet Property], believing that 2341 Odin was sold, and coded the account as unsecured putting into motion the series of events which released the 2341 Odin mortgage and amended the Proof of Claim to zero."

be distributed to the SBA "as the second lienholder on the subject property." [No. 17-12596, ECF Doc. 77, at 2].

Meanwhile, the SBA sought and received from the Court on August 6, 2019, an extension of time to file an Answer in the Adversary Proceeding. [ECF Docs. 4 & 5]. The SBA filed an Answer in the Adversary Proceeding on August 20, 2019. [ECF Doc. 7]. On August 22, 2019, the SBA filed in the Debtor's main case a motion to reconsider the Odin Sale Order pursuant to Bankruptcy Rule 3008 and, alternatively, Rule 60 of the Federal Rules of Civil Procedure, made applicable to this case by Bankruptcy Rule 9024. [No. 17-12596, ECF Doc. 79]. The SBA's motion asserted that, not only did the SBA lack notice of the Odin Sale Motion and, therefore, lacked an opportunity to be heard before the Court reinscribed RTR's mortgage on the Odin Property, but the "*sua sponte* bench ruling that was incorporated into the [Odin Sale Order] resolved RTR's adversary proceeding completely in [RTR's] favor even before it had effected service of the adversary complaint upon the United States." *Id*. at 3.

On October 23, 2019, the Court granted the SBA's motion to reconsider the Odin Sale Order to the extent that it (i) reinscribed RTR's lien on the Odin Property, reduced the value of SBA's lien on the Odin Property, (ii) directed the Debtor to pay proceeds from the sale of the Odin Property to any lienholder, (iii) directed any lienholder to file a proof of claim or an amended proof of claim for any deficiency, and (iv) directed the Clerk of Court of Orleans Parish, Lands Records Division, to cancel and erase from the records the inscription of any and all mortgages, liens, and encumbrances against the Odin Property.[3] [No. 17-12596, ECF Doc. 90].

The adversary proceeding initiated by RTR proceeded and on December 31, 2019, the parties filed cross-motions for summary judgment. [ECF Docs. 12 & 14]. RTR asserts that its

---

[3] On December 3, 2019, the Court read into the record its Order and Reasons granting the SBA's motion to reconsider.

6

first-position lien on the Odin Property should be reinstated under the exception to the Louisiana Public Records Doctrine, which allows reinstatement of a mortgage cancelled due to fraud, error, or mistake. [ECF Doc. 14, at 6–10]. The SBA asserts that the exception to the Louisiana Public Records Doctrine does not apply here to reinstate RTR's lien, as the error cancelling its lien was of its own making. [ECF Doc. 12, at 6–9]. For the reasons stated below, the Court finds in favor of RTR.

## CONCLUSIONS OF LAW

### A. Summary Judgment Standard

Summary judgment under Federal Rule of Civil Procedure 56(a), made applicable to this proceeding by Bankruptcy Rule 7056, is appropriate when the movant shows that there is no genuine dispute as to any material fact and that she is entitled to judgment as a matter of law. In deciding a motion for summary judgment, "the judge's function is not [herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In so doing, the Court views the facts and evidence in the light most favorable to the non-moving party at all times. *See Campo v. Allstate Ins. Co.*, 562 F. 3d 751, 754 (5th Cir. 2009). The Fifth Circuit has stated that "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon evidence before the court." *James v. Sadler*, 909 F. 2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

The parties here have filed cross-motions for summary judgment with respect to whether the exception to the Louisiana Public Records Doctrine applies to allow RTR to reinscribe its first-position mortgage on the Odin Property. When both parties move for summary judgment in cross

motions, a court must rule on each party's motion on an individual and separate basis. *See White Buffalo Ventures, LLC v. Univ. of Tex. at Austin*, 420 F.3d 366, 370 (5th Cir. 2005). "If there is no genuine issue of material fact and one or the other party is entitled to prevail as a matter of law, a court will render judgment." *Standard Ins. Co. v. Corgill*, No. 3:13-CV-00997, 2013 WL 12101080, at *2 (N.D. Tex. July 23, 2013).

### B. The Louisiana Public Records Doctrine

Codified at article 3338 of the Louisiana Civil Code, "[t]he Louisiana public records doctrine generally expresses a public policy that an interest in real estate must be recorded in order to affect third persons." *McClain v. NMP, LLC*, 262 So.3d 409, 419 (La. App. 5 Cir. 2018). "Simply put, an instrument in writing affecting immovable property that is not recorded is null and void except between the parties." *Id.* (citing *Cimarex Energy Co. v. Mauboules*, 40 So.3d 931, 943 (La. 2010)). "The primary focus of the public records doctrine is the protection of third persons against unrecorded instruments by denying the effects of the unrecorded interests, except as between the parties." *Id.* (citing LA. CIV. CODE arts. 3338 & 3343; *Cimarex Energy Co.*, 40 So.3d at 944).

"A longstanding exception to the public records doctrine exists, however, where a mortgage is cancelled from the public records through fraud, error, or mistake." *Deutsche Bank Nat'l Tr. Co. for Morgan Stanley ABS Capital I Inc., Tr. 2004-WMC2 v. McNamara*, No. 2017-CA-0173, 2017 WL 4700650, at *3 (La. App. 4 Cir. Oct. 18, 2017). "The rule seems arbitrary, but it is now well settled by the decisions of this court, that a cancellation of a mortgage by the recorder without the knowledge or consent of the holder of the negotiable mortgage note does not deprive him of his security, **even with regard to a third party dealing with the property on his faith in the public record**." *Zimmer v. Fryer*, 183 So. 166, 167 (La. 1938) (internal quotation and

citation omitted) (emphasis added). In commenting on the exception to the public records doctrine, the Louisiana Fourth Circuit Court of Appeal observed:

> [T]he rationale on which the rule is predicated is not as arbitrary as it would appear . . . . In contradistinction to popular legal opinion, the law of registry does not create rights, but instead makes them effective against third persons. If an act of release of mortgage constituted irrebuttable proof of its own validity irrespective of forgery or material alteration, third persons would be fully protected in acquiring property in sole reliance on the public records. However, if this were so, no title to real property would be safe, since it could be divested from its true owner through a forged or altered document by means of the mere recordation thereof. Consequently, we are convinced that [this] rule . . . is necessary for the security and protection of titles to immovable property.

*Lacour v. Ford Inv. Corp.*, 183 So.2d 463, 465–66 (La. App. 4 Cir. 1966).

### C. Does the Exception to the Louisiana Public Records Doctrine Apply To Reinstate RTR's Mortgage on the Odin Property?

Generally, a mortgage holder who knows of the cancellation of his mortgage cannot benefit by the exception to the Louisiana Public Records Doctrine. *See, e.g.*, *Schudmak v. Prince Phillip P'ship*, 573 So.2d 547, 551 (La. Ct. App. 1991) ("In this case, however, Schudmak knew of the cancellation of his mortgage; in fact, it was he who filed to have the vendor's lien cancelled. The fact that he may have bene fraudulently induced to cancel his vendor's lien is of no moment to and cannot affect the rights of innocent third parties."). Here, inadvertent or not, RTR canceled its own lien; therefore, the exception to the Louisiana Public Records Doctrine does not apply.

That said, all of the cases cited by the SBA involve allegedly mistaken or fraudulent mortgage cancellations that have come to light **after the sale of property to a third party**. *See Neeb v. Graffagnino*, 136 So.3d 353 (La. App. 5th Cir. 2014); *Hiers v. Dufreche*, 2012-1132 (La. App. 1 Cir. May 31, 2013), *judgment vacated on reh'g*, 2012-1132 (La. App. 1st Cir. Oct. 24, 2013); *Schudmak*, 573 So.2d at 551 (La. Ct. App. 1991); *McL. Dev. Co., Inc. v. Pyburn*, 268 So.2d 296, 298 (La. App. 2d Cir. 1972); *Nat'l Acceptance Co. of Am. v. Wallace*, 194 So.2d 194, 201

9

(La. App. 2d Cir. 1967). The facts in those cases are distinguishable from the present case because they hinge upon a third-party purchaser's actual reliance on the public records in acquiring an interest in or encumbering the property. Here, at the time the SBA entered into the Multiple Indebtedness Mortgage on the Odin Property, the SBA knew of RTR's first position conventional mortgage thereon. Therefore, the SBA is not a third party who relied upon RTR's error in the public records in acquiring an interest in the Odin Property.

Under these facts, the SBA is not the intended beneficiary of the Louisiana Public Records Doctrine. Therefore, allowing it to benefit from RTR's mistake would reach an inequitable result. Allowing RTR to reinscribe its mortgage and lien would not place the SBA in a worse position than it was in prior to RTR's erroneous cancellation, and it would prevent the SBA from obtaining a windfall due to RTR's mistake. This Court is loath to reward RTR for its negligence; however, a finding in RTR's favor is in line with cases interpreting the Louisiana Public Records Doctrine and equitable given that neither the SBA nor any third party will be actually harmed by the reinscription of RTR's first-position conventional mortgage.

## CONCLUSION

Based on the foregoing findings of fact and conclusions of law, this Court (1) GRANTS RTR's Motion for Summary Judgment, finding that RTR is permitted to reinscribe its first-position conventional mortgage on the Odin Property and (2) DENIES the SBA's Motion for Summary Judgment. A separate judgment on the Complaint consistent with this Memorandum Opinion will be entered contemporaneously and in accordance with Bankruptcy Rules 7054 and 9021.

New Orleans, Louisiana, March 12, 2020.

MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE