## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § § § § | CASE NO: 17-12596 |
| | § | CHAPTER 13 |
| MICHELE GENTRY STEWART, | § § | SECTION "A" |
| DEBTOR. | § § | |

| | | |
|---|---|---|
| REAL TIME RESOLUTIONS, INC. AS AGENT FOR RRA CP OPPORTUNITY TRUST 1, | § § § § | |
| PLAINTIFF, | § § | ADV. NO. 19-1105 |
| V. | § § | |
| UNITED STATES SMALL BUSINESS ADMINISTRATION, | § § § | |
| DEFENDANT. | § § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is the *United States' Motion for Reconsideration of an Allowed Claim or Alternatively for Relief from an Order of this Court* (the "Motion for Reconsideration"), [ECF Doc. 27], filed on behalf of the U.S. Small Business Administration ("SBA") and the Response thereto, [ECF Doc. 31], filed by Real Time Resolutions, Inc. as Agent for RRA CP Opportunity Trust 1 ("RTR"). For the reasons discussed herein, the Court **GRANTS** the Motion for Reconsideration and the Court's Memorandum Opinion and Order issued on March 12, 2020, [ECF Doc. 24], is **VACATED**. Further, for the reasons discussed herein, the Court **GRANTS** the SBA's Motion for Summary Judgment, [ECF Doc. 12], and **DENIES** RTR's Motion for Summary Judgment, [ECF Doc. 14].

1

## JURISDICTION AND VENUE

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and the Order of Reference of the District Court dated April 11, 1990.  The matters presently before the Court constitute core proceedings that this Court may hear and determine on a final basis under 28 U.S.C. § 157(b)(2)(A), (K), and (O).  Venue is proper in this District.  *See* 28 U.S.C. §§ 1408 and 1409(a).

## BACKGROUND

### A.  Prepetition Encumbrances of the Debtor's Property

The parties agree on the material facts.

On September 28, 2017 (the "Petition Date"), Debtor Michele Gentry Stewart filed a petition for chapter 13 bankruptcy relief.  [No. 17-12596, ECF Doc. 1].  In her Schedules, she listed 3208 Townshend Road in Gretna, Louisiana, as her homestead.  [No. 17-12596, ECF Doc. 9, at 12].  Additionally, the Debtor listed two rental properties wholly owned by her located at 7848 N. Coronet Court (the "Coronet Property") and 2341 Odin Street (the "Odin Property"), both in New Orleans, Louisiana.  [No. 17-12596, ECF Doc. 9, at 13].

Based on the Debtor's representations, as of the Petition Date, Regions Bank held a first mortgage against the Coronet Property in the amount of $12,071.63.  [No. 17-12596, ECF Doc. 9, at 13; Proof of Claim No. 14 (filed by the Debtor on behalf of Regions Bank)].

As of the Petition Date, RTR had acquired a debt originally owed by the Debtor to Hibernia National Bank on a Home Equity Line of Credit in the principal amount of $35,000 which originated on July 22, 2005 (the "HELOC Debt").  [ECF Doc. 14, Ex. A].  The repayment of the HELOC Debt was secured in part by the Odin Property via a Multiple Indebtedness Mortgage dated July 22, 2005, granted by the Debtor and recorded by Hibernia National Bank on August 4,

2005.  *Id*.  On January 24, 2017, Capital One, N.A. (which by that time had acquired Hibernia

Bank) reduced the HELOC Debt to judgment against the Debtor in the Orleans Parish Civil District

Court in the principal amount of $35,000.  [ECF Doc. 14, Ex. C].  Capital One recorded that

judgment on March 9, 2017.  *Id*.[1]  By virtue of that judgment, RTR also held a judicial mortgage

over the Coronet Property.  [ECF Doc. 14, at 3].  On January 30, 2018, RTR filed Proof of Claim

No. 13-1 in the Debtor's case, alleging a $40,115.01 secured claim against the Debtor and listing

a "second mortgage" on the Odin Property as the basis for its secured claim.

Also as of the Petition Date, the SBA held a Promissory Note in the principal amount of

$132,300, secured by a Multiple Indebtedness Mortgage on the Odin Property (the "<u>SBA</u>

<u>Mortgage</u>").  [ECF Doc. 12, at 2 (citing ECF Doc. 1, Ex. C)].  The SBA recorded its mortgage on

July 5, 2006.  *See id*.  The SBA filed Proof of Claim No. 15-2 on December 19, 2019, alleging a

secured claim against the Debtor in the amount of $88,865.99, and listing the Odin Property as the

basis for its secured claim.

**B. Post-Petition Sale of the Debtor's Properties and RTR's Cancellation of Its Own Mortgage**

On February 7, 2018, the Debtor filed its *First Amended Motion for Authority To Sell*

*Property*, requesting leave of the Court to sell the Coronet Property for $25,000 (the "<u>Coronet Sale</u>

<u>Motion</u>").  [No. 17-12596, ECF Doc. 36].  The Coronet Sale Motion proposed that the sale of the

Property would satisfy the first mortgage of Regions Bank, with the remaining proceeds being

used to satisfy normal closing costs, brokers' commissions, recordation fees, and unpaid property

taxes, as well as a portion of the judgment lien held by RTR.  *Id*.  On March 20, 2018, the Court

granted the relief as requested in the Coronet Sale Motion.  [No. 17-12596, ECF Doc. 51].

---

[1]     For purposes of this Memorandum Opinion., the Court assumes, without finding, that RTR's acquisition of the Hibernia/Capital One debt is proper.

Following the sale of the Coronet Property, RTR received funds from the sale of the Coronet Property which were insufficient to pay the loan in full. [ECF Doc. 14, Ex. E]. But instead of issuing a partial cancellation of the mortgage on the Coronet Property, RTR issued a full cancellation of the mortgage on the Odin Property. *Id.* Further, almost a year from the date the Court granted the Coronet Sale Motion, RTR amended its Proof of Claim on March 5, 2019, reducing its secured claim to zero and stating that the "Property" had been sold. [No. 17-12596, Proof of Claim No. 13-2].

On June 4, 2019, the Debtor filed *Debtor's Motion for Authority To Sell Property*, requesting the Court's permission to sell the Odin Property for $105,000 (the "Odin Sale Motion"), and setting that motion for hearing on June 25, 2019. [No. 17-12596, ECF Docs. 72 & 73]. The Certificate of Service filed by the Debtor stated that it served the Odin Sale Motion and Notice of Hearing on the Chapter 13 Trustee, the U.S. Trustee, and counsel for RTR via the Court's electronic filing system, and to the SBA via First Class Mail at two addresses: 10737 Gateway West, Suite 300, El Paso, Texas 79935, and 200 W. Santa Ana Blvd., Ste. 740, Santa Ana, CA 92701. [No. 17-12596, ECF Doc. 73].[2]

---

[2]     Notably, it may have been the Debtor who alerted RTR to the fact that it had cancelled its own lien. In the Odin Sale Motion, the Debtor represented:

> Debtor believes that Real Time Resolutions holds a lien on the property, but is unaware at this time of the exact amount of the lien.
>
> . . . .
>
> Undersigned counsel contact the attorney's office representing Real Time Resolution in bankruptcy court because undersigned counsel believed the amended proof of claim to be a mistake. Undersigned counsel notified Real Time Resolutions' representatives that Debtor received a purchase agreement on the Odin Street property and requested an updated lien amount. Undersigned counsel has continually followed-up with Real Time Resolution's attorney office regarding the lien amount, but has not received any updated account information. The current claim on file in the record reflects a zero balance.

[No. 17-12596, ECF Doc. 72, ¶¶ 4 & 6].

4

On June 14, 2019, RTR filed a Response to the Odin Sale Motion. [No. 17-12596, ECF Doc. 75]. In its Response, RTR stated that, based on an "internal mistake," it "inadvertently" amended its Proof of Claim on March 5, 2019, reducing its claim against the estate to zero. It also stated that it mistakenly released its conventional mortgage on the Odin Property, instead of the Coronet Property. [No. 17-12596, ECF Doc. 75, ¶ 5 & n.1].[3] RTR further asserted that it should be allowed to re-instate its mortgage on the Odin Property, arguing that its mistake falls into the narrow exception to the Louisiana Public Records Doctrine, which permits reinstatement of its mortgage due to mistake and inadvertence. [No. 17-12596, ECF Doc. 75, ¶ 8]. Because of its inadvertent cancellation of its mortgage on the Odin Property, RTR requested that the proceeds of the sale of the Odin Property be held in the Court's registry until the Court could determine whether to reinstate RTR's conventional mortgage (and therefore RTR's priority over the SBA as to the Odin Property) via an adversary proceeding. [No. 17-12596, ECF Doc. 75, ¶ 7].

Also on June 14, 2019, contemporaneously with filing its Response to the Odin Sale Motion, RTR filed the above-captioned adversary proceeding against the SBA, seeking to reinstate its mortgage on the Odin Property and a determination of its priority vis-á-vis the SBA. [ECF Doc. 1]. RTR served the Complaint initiating the Adversary Proceeding on the SBA pursuant to Bankruptcy Rule 7004(b)(4), [ECF Doc. 3], but did not serve its Response to the Odin Sale Motion on the SBA in the main case, [No. 17-12596, ECF Doc. 75].

The Court held a hearing on the Odin Sale Motion on June 25, 2019. Counsel for the Debtor, RTR, and the Chapter 13 Trustee appeared at the hearing. [Memo to Record No. 76]. The

---

[3]     Footnote 1 of RTR's response states: "Creditor internally misread the Order on the Motion to Sale [the Coronet Property], believing that 2341 Odin was sold, and coded the account as unsecured putting into motion the series of events which released the 2341 Odin mortgage and amended the Proof of Claim to zero."

SBA did not appear. The Court granted the Odin Sale Motion and issued an Order on July 8, 2019 (the "Odin Sale Order"), approving not only the sale of the Odin Property, but also permitting RTR to reinscribe its mortgage, despite the pending Adversary Proceeding filed by RTR. [No. 17-12596, ECF Doc. 77]. The Odin Sale Order required the Debtor to pay the full amount of RTR's reinscribed mortgage after paying closing costs and fees and ordered that any remaining funds to be distributed to the SBA "as the second lienholder on the subject property." [No. 17-12596, ECF Doc. 77, at 2].

Meanwhile, the SBA sought and received from the Court on August 6, 2019, an extension of time to file an Answer in the Adversary Proceeding. [ECF Docs. 4 & 5]. The SBA filed an Answer in the Adversary Proceeding on August 20, 2019. [ECF Doc. 7]. On August 22, 2019, the SBA filed in the Debtor's main case a motion to reconsider the Odin Sale Order pursuant to Bankruptcy Rule 3008 and, alternatively, Rule 60 of the Federal Rules of Civil Procedure, made applicable to this case by Bankruptcy Rule 9024. [No. 17-12596, ECF Doc. 79]. The SBA's motion asserted that, not only did the SBA lack notice of the Odin Sale Motion and, therefore, lacked an opportunity to be heard before the Court reinscribed RTR's mortgage on the Odin Property, but the "*sua sponte* bench ruling that was incorporated into the [Odin Sale Order] resolved RTR's adversary proceeding completely in [RTR's] favor even before it had effected service of the adversary complaint upon the United States." *Id*. at 3.

On October 23, 2019, the Court granted the SBA's motion to reconsider the Odin Sale Order to the extent that it (i) reinscribed RTR's lien on the Odin Property, reduced the value of SBA's lien on the Odin Property, (ii) directed the Debtor to pay proceeds from the sale of the Odin Property to any lienholder, (iii) directed any lienholder to file a proof of claim or an amended proof of claim for any deficiency, and (iv) directed the Clerk of Court of Orleans Parish, Lands Records

Division, to cancel and erase from the records the inscription of any and all mortgages, liens, and encumbrances against the Odin Property.[4]   [No. 17-12596, ECF Doc. 90].

The adversary proceeding initiated by RTR proceeded and on December 31, 2019, the parties filed cross-motions for summary judgment.  [ECF Docs. 12 & 14].  RTR asserted that its first-position lien on the Odin Property should be reinstated under the exception to the Louisiana Public Records Doctrine, which allows reinstatement of a mortgage cancelled due to fraud, error, or mistake.  [ECF Doc. 14, at 6–10].  The SBA asserted that the exception to the Louisiana Public Records Doctrine does not apply here to reinstate RTR's lien, as the error cancelling its lien was of its own making.  [ECF Doc. 12, at 6–9].  The Court later issued a memorandum opinion and order and granted RTR's motion for summary judgment, and denied the SBA's motion for summary judgment.  [ECF Doc. 24].

After the Court issued its opinion, the SBA timely filed the Motion for Reconsideration and asked the Court to reconsider its opinion allowing RTR to reinscribe its first-position conventional mortgage on the Odin Property, or in the alternative, that the Court grant the SBA relief on the basis of "mistake, inadvertence or surprise and/or any other reason that justifies relief[.]"  [ECF Doc. 27, at 1 – 2].

## CONCLUSIONS OF LAW

### A.  Standard for a Motion for Reconsideration

The Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure do not specifically provide for motions for reconsideration.  *AMP Automotive, LLC v. B F T, LP*, No. 17-5667, 2018 WL 5266582, at *1 (E.D. La. Oct. 23, 2018) (citing *Bass v. U.S. Dep't of Agric.*, 211 F.3d 959, 962 (5th Cir. 2000)).  But "[m]otions for reconsideration filed no later than fourteen

---

[4]      On December 3, 2019, the Court read into the record its reasons for granting the SBA's motion to reconsider.

days after entry of judgment are treated as motions for new trial or motions to alter or amend a judgment pursuant to Federal Rule of Civil Procedure 59, made applicable in bankruptcy court by Federal Rule of Bankruptcy Procedure 9023." *In re McClain*, No. 19-11325, 2020 WL 1867906, at *1 (Bankr. M.D. La. Apr. 14, 2020) (citing *Abraham v. Aguilar (In re Aguilar)*, 861 F.2d 873, 875 (5th Cir. 1988)).

"To prevail on a motion to alter or amend, the movant has the burden of establishing one of the following: '(1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice.' " *In re Baribeau*, 603 B.R. 797, 800 (Bankr. W.D. Tex. 2019) (quoting *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002)). But a Rule 59 motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem, Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (internal quotations and citations omitted). "Whatever may be the purpose of Rule 59(e), it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge." *McDonald v. Entergy Operations, Inc.*, No. 03-CV-241, 2005 WL 1528611, at *1 (S.D. Miss. May 31, 2005).

In the Fifth Circuit, relief under Rule 59 is an "extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479. "A trial court has 'considerable discretion' in deciding a motion to alter or amend and 'the trial court must strike the proper balance between . . . (1) finality, and (2) the need to render just decisions on the basis of all the facts.'" *In re Baribeau*, 603 B.R. at 800 (quoting *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993)). The Court grants SBA's Motion for Reconsideration to correct an error of law and to render a just decision on the basis of all of the facts.

### B. Summary Judgment Standard

Summary judgment under Federal Rule of Civil Procedure 56(a), made applicable to this proceeding by Bankruptcy Rule 7056, is appropriate when the movant shows that there is no genuine dispute as to any material fact and that she is entitled to judgment as a matter of law.  In deciding a motion for summary judgment, "the judge's function is not [herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  In so doing, the Court views the facts and evidence in the light most favorable to the non-moving party at all times.  *See Campo v. Allstate Ins. Co*., 562 F.3d 751, 754 (5th Cir. 2009).  The Fifth Circuit has stated that "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986)).

The parties filed cross-motions for summary judgment with respect to whether the exception to the Louisiana Public Records Doctrine applies to allow RTR to reinscribe its first-position mortgage on the Odin Property.  When both parties move for summary judgment in cross motions, a court must rule on each party's motion on an individual and separate basis.  *See White Buffalo Ventures, LLC v. Univ. of Tex. at Austin*, 420 F.3d 366, 370 (5th Cir. 2005).  "If there is no genuine issue of material fact and one or the other party is entitled to prevail as a matter of law, a court will render judgment."  *Standard Ins. Co. v. Corgill*, No. 3:13-CV-00997, 2013 WL 12101080, at *2 (N.D. Tex. July 23, 2013).

### C. The Exception to the Louisiana Public Records Doctrine Does Not Apply To Reinscribe RTR's Mortgage

Codified at article 3338 of the Louisiana Civil Code, "[t]he Louisiana public records doctrine generally expresses a public policy that an interest in real estate must be recorded in order to affect third persons." *McClain v. NMP, LLC*, 262 So.3d 409, 419 (La. App. 5 Cir. 2018). "Simply put, an instrument in writing affecting immovable property that is not recorded is null and void except between the parties." *Id.* (citing *Cimarex Energy Co. v. Mauboules*, 40 So.3d 931, 943 (La. 2010)). "The primary focus of the public records doctrine is the protection of third persons against unrecorded instruments by denying the effects of the unrecorded interests, except as between the parties." *Id.* (citing LA. CIV. CODE arts. 3338 & 3343; *Cimarex Energy Co.*, 40 So.3d at 944).

"A longstanding exception to the public records doctrine exists, however, where a mortgage is cancelled from the public records through fraud, error, or mistake." *Deutsche Bank Nat'l Tr. Co. for Morgan Stanley ABS Capital I Inc., Tr. 2004-WMC2 v. McNamara*, No. 2017-CA-0173, 2017 WL 4700650, at *3 (La. App. 4 Cir. Oct. 18, 2017). "The rule seems arbitrary, but it is now well settled by the decisions of this court, that a cancellation of a mortgage by the recorder **without the knowledge or consent of the holder** of the negotiable mortgage note does not deprive him of his security, even with regard to a third party dealing with the property on his faith in the public record." *Zimmer v. Fryer*, 183 So. 166, 167 (La. 1938) (internal quotation and citation omitted) (emphasis added). In commenting on the exception to the public records doctrine, the Louisiana Fourth Circuit Court of Appeal observed:

> [T]he rationale on which the rule is predicated is not as arbitrary as it would appear . . . . In contradistinction to popular legal opinion, the law of registry does not create rights, but instead makes them effective against third persons. If an act of release of mortgage constituted irrebuttable proof of its own validity irrespective of forgery or material alteration, third persons would be fully protected in acquiring

10

> property in sole reliance on the public records.  However, if this were so, no title to real property would be safe, since it could be divested from its true owner through a forged or altered document by means of the mere recordation thereof.  Consequently, we are convinced that [this] rule . . . is necessary for the security and protection of titles to immovable property.

*Lacour v. Ford Inv. Corp*., 183 So.2d 463, 465–66 (La. App. 4 Cir. 1966).

But a mortgage holder who knows of the cancellation of his mortgage cannot benefit by the exception to the Louisiana Public Records Doctrine.  *See, e.g*., *Schudmak v. Prince Phillip P'ship*, 573 So.2d 547, 551 (La. Ct. App. 1991) ("In this case, however, Schudmak knew of the cancellation of his mortgage; in fact, it was he who filed to have the vendor's lien cancelled.  The fact that he may have bene fraudulently induced to cancel his vendor's lien is of no moment to and cannot affect the rights of innocent third parties.").  According to the affidavit submitted by RTR in support of its motion for summary judgment, its "cancellation and amendment of claim were the result of an internal error on behalf of employees of [RTR]."  [ECF Doc. 14, Ex. E].  RTR further explained:  "Employees acting on behalf of [RTR] acted under the mistaken belief that 2341 Odin Street was sold free and clear."  *Id*.

The record shows that RTR not only cancelled its own mortgage on the Odin Property after receiving proceeds from the sale of the Coronet Property, but confirmed the legitimacy of that action by amending its proof of secured claim against the estate to zero almost a full year later.  Inadvertently or not, RTR canceled its own mortgage.  Under the analysis and holding in *Schudmak*, RTR is not the mortgage holder that the exception to the Louisiana Public Records Doctrine has been developed to protect.  Therefore, the exception to the Louisiana Public Records Doctrine does not apply here to allow RTR to reinscribe its mortgage.

### D. RTR's Cancellation of Its Own Mortgage Is Not a Clerical Error Triggering the Applicability of Section 35:2.1 of the Louisiana Revised Statutes

RTR also asserts that it would have been able to reinscribe its mortgage by filing an act of correction, but was prohibited from doing so due to the imposition of the automatic stay by 11 U.S.C. § 362(a). [ECF Doc. 14, at 9]. It is true that "Louisiana Revised Statutes § 35:2.1 authorizes acts of correction to correct clerical errors and other minor mistakes in recorded documents, after which the correction is given retroactive effect to the time of the recordation of the original document[.]" *In re LeBlanc*, 604 B.R. 693, 706 (E.D. La. 2019). That statute provides:

A. A clerical error in a notarial act affecting movable or immovable property or any other rights, corporeal or incorporeal, may be corrected by an act of correction executed by the notary or one of the notaries before whom the act was passed, or by the notary who actually prepared the act containing the error. The act of correction shall be executed by the notary before two witnesses and another notary public.

B. The act of correction executed in compliance with this Section shall be given retroactive effect to the date of recordation of the original act. However, the act of correction shall not prejudice the rights acquired by any third person before the act of correction is recorded where the third person reasonably relied on the original act. The act of correction shall not alter the true agreement and intent of the parties.

C. A certified copy of the act of correction executed in compliance with this Section shall be deemed to be authentic for purposes of executory process.

D. This Section shall be in addition to other laws governing executory process.

LA. REV. STAT. ANN. § 35:2.1.

Louisiana courts have repeatedly found that § 35:2.1 applies only to "clerical" errors rather than substantive errors. *See First Nat'l Bank, USA v. DDS Constr., LLC*, 91 So.3d 944, 955 (La. 2012); *Cockerham v. Cockerham*, 201 So.3d 253, 262 (La. App. 1 Cir. 2013); *Vickers v. Vickers*, 25 So.3d 210, 213–14 (La. App. 3 Cir. 2009). A clerical error results from a minor mistake or inadvertence, especially "in writing or copying something on the record, and not from judicial reasoning or determination." *First Nat'l Bank, USA,* 91 So.3d at 955 (quoting BLACK'S LAW

DICTIONARY 622 (9th ed. 2009)).  But an act of correction may not be used to correct substantive errors.  *See Cockerham,* 201 So.3d at 262.  An error is substantive where "there is no evidence to suggest that it . . . resulted from a minor mistake or inadvertence during the document preparation process."  *Vickers,* 25 So.3d at 213.

RTR relies on the Louisiana Supreme Court's decision in *First National Bank, USA v. DDS Construction, LLC,* to support its contention that this Court could lift the stay to allow RTR to reinscribe its mortgage and  reinstate its lien priority status by filing an act of correction pursuant to § 35:2.1.  In that case, in connection with a voluntary agreement to release its liens on certain mortgaged properties based on partial payment, a vice president at First National Bank instructed the parish recorder of mortgages to cancel from the mortgage records a mortgage that encumbered a series of property lots—but he included in that list the number of an extra lot that should not have been included.  91 So.3d at 948–49.  The bank attempted to reinstate its mortgage through acts of correction pursuant to § 35:2.1, but a competing lienholder challenged those attempts.  *Id.* at 949–50.  In the end, the Louisiana Supreme Court ruled in favor of First National Bank, holding, among other things, that "including, or failing to include, a number in a series of numbers is just one of the almost limitless examples of clerical errors" that § 35:2.1 authorizes for correction.  *Id.*

But RTR is not in the same position as the bank in *First National Bank, USA.*  Even if RTR were to move this Court to lift the automatic stay to allow it to file an act of correction, based on the facts in the record, applicable law, and for the reasons described in Subpart C above, the Court finds that § 35:2.1 would not apply, as RTR's actions in cancelling its mortgage was a substantive error, not a mere clerical one.  *See, e.g.*, *Vickers,* 25 So.3d at 213–14; *City of Harahan v. State ex rel. Div. of Admin.,* 986 So. 2d 755, 761 (La. App. 5 Cir. 2008).

## CONCLUSION

Based on the foregoing reasons, this Court

(1) **GRANTS** the SBA's Motion for Reconsideration, [ECF Doc. 27];

(2) **VACATES** the prior Memorandum Opinion and Order, [ECF Doc. 24];

(3) **GRANTS** the SBA's Motion for Summary Judgment, [ECF Doc. 12]; and

(4) **DENIES** RTR's Motion for Summary Judgment [ECF Doc. 14].

A separate judgment on the Complaint consistent with this Memorandum Opinion will be entered contemporaneously and in accordance with Bankruptcy Rules 7054 and 9021.

New Orleans, Louisiana, December 28, 2020.

MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE